YELVERTON, Judge.
The appeals in these two consolidated cases arise from a train-automobile collision in Lafayette Parish on April 23, 1980. The driver of the car, Sally Weil, and the passenger in the car, Eric Hess, each filed suit for personal injuries against Southern Pacific Transportation Company, based on the train’s negligence or fault. In his suit the passenger, Hess, also named as a defendant the driver, Weil, and her liability insurer Hanover Insurance Company, based on her alleged negligence.
After trial, judgment was rendered in Weil’s case (the captioned case) finding Southern Pacific at fault but dismissing her claim on a finding that she was contribu-torily negligent. (At the time of this accident, April 23, 1980, the contributory negligence of a plaintiff operated as a complete bar to recovery, as Louisiana’s newly passed comparative negligence law did not go into effect until August 1, 1980.) Weil and her insurer appealed the issue of her contributory negligence.
In the companion case, Hess v. Southern Pacific Transportation Company, et al., 478 So.2d 702 (La.App. 3rd Cir.1985) judgment was rendered for Hess, the passenger, awarding him $675,672 plus interest against both Southern Pacific and Weil, and her insurer, Hanover, to the extent of its policy limits. The trial court found that both the railroad company and Weil were negligent and that the negligence of each was a cause in fact of Hess’s injuries. Southern Pacific appealed this judgment contesting the finding of its negligence and the failure to find Hess contributorily negligent. Weil and her insurer appealed from this judgment contesting the failure to find Hess contribu-torily negligent.
While these two appeals were pending, Southern Pacific apparently settled with Hess, as Hess dismissed the companion suit and judgment against Southern Pacific, reserving his rights, however, against the other judgment debtors named therein, Weil and Hanover. This means that the only issue still alive in the case is the contributory negligence of Hess.
In the captioned case, the single issue on appeal was and remains the contributory negligence of Weil. Other than to protect its judgment rejecting the demands of Weil because of her contributory negligence, Southern Pacific has no interest in either appeal. The finding of its negligence, or fault, is not before us. Thus, the only two issues before us now are whether the trial court erred in finding Sally Weil guilty of negligence which was a cause in fact of the *699 accident, and alternatively whether the trial court erred in failing to find Erie Hess contributorily negligent.
We render an opinion today in the captioned case regarding both these factual issues, and we will render a separate judgment in the companion case. We are affirming the trial court.
On April 23, 1980, at approximately 8:25 P.M. Sally Weil was driving her vehicle, with Eric Hess riding as a guest passenger, in a northerly direction on Affiliated Drive near Broussard, Louisiana, when her vehicle was struck by a Southern Pacific train which was traveling in an easterly direction. The night was clear and the road was dry on the night of the accident.
Affiliated Drive is a two-lane road connecting with Louisiana Highway 90 to the north. The road is not a through street. It serves a trailer park and the business Affiliated Foods. A single railroad track runs parallel to Highway 90 and intersects with Affiliated Drive. Crossbucks were placed on each side of the crossing to warn north and southbound traffic of the existence of the crossing.
Sally Weil and Eric Hess had no recollection of the facts surrounding the accident. Eric Hess testified that he saw Sally that afternoon and asked her to meet him that evening at a local bar. While waiting for her to arrive he shot pool and consumed six to ten beers. After she arrived they went back to her apartment. Later she decided to drive to her former residence at the trailer park. Mr. Hess last remembered turning around in the trailer park to go to a restaurant for dinner. Sally Weil testified that she had moved from the trailer park about two weeks before the accident. She had lived at the trailer park for about a month, and had crossed the tracks twice a day while living there. She did not recall how many beers she had drunk on the night of the accident but stated it was probably a couple. She remembered that on the night of the accident she had to go to her old residence to pick up some of her things, but could recall nothing about the accident itself.
Harry Usey, the engineer of the train, and Peggy Cannatella, engineer-trainee, testified that Miss Cannatella was driving the train at the time of the accident under the immediate supervision of Mr. Usey. There were three crossings in a group, including the crossing where the accident occurred. At approximately a quarter of a mile before the first crossing Miss Canna-tella said she began to sound the horn and whistle of the train. The train was moving at approximately 25 miles per hour, the same as the speed limit. Both Cannatella and Usey testified that the two oscillating lights on top of the train and the running lights were properly working, having been inspected prior to departure, and that the horn and whistle were sounded continuously before the accident. They noticed the headlights of a car. Mr. Usey testified that the car turned onto Affiliated Drive and its taillights came on as it approached the crossbucks approximately 20 to 25 feet from the track as if the vehicle were going to stop. However, it accelerated at that time and Mr. Usey cried out to Miss Canna-tella, “They’re not going to stop!”, and both simultaneously put the train in emergency application. They stated the train was approximately 50 feet from the intersection when they pulled the emergency valve.
Michael Minsey, a patrol officer who investigated the accident, stated that the lights on the train were on and working and that the driver of the vehicle had been drinking. He testified that once a vehicle got past a fence that was built parallel to the track there was an open area and that there were no obstructions to a driver’s vision.
Rita Broussard, a former employee of Affiliated Foods, stated that she witnessed the accident. According to her testimony, she was leaving the parking lot of Affiliated Foods and had stopped at the guard house to allow the Weil vehicle to turn left on Affiliated Drive. The Weil vehicle proceeded toward the track, stopped near the crossbucks, and then proceeded across the track. She stated she had her window *700 down and did not have the radio on, and that the first time she saw or heard the train was at impact. She said that the Weil vehicle was going at a slow rate of speed with its headlights on.
John Begnaud, another Affiliated Foods employee, testified he had been working in the yard of Affiliated Foods on the night of the accident and that before hearing the crash he did not hear a horn blowing. He was working about a city block away from the accident site.
Sandy Comeaux, a resident of the trailer park living in a trailer near the fence by the railroad track, testified that on the night of the accident she heard the train whistle blowing and the train passing. Then she heard the screeching of brakes and the impact of something being hit. She heard the whistle before the train came near the back part of her trailer and the whistle did not stop blowing before the noise of the impact.
The deposition of John Baerwald, a traffic engineer, indicated that there were crossbucks located on each side of the track, but that there were no other advance warning signs on either side of the track. There were also no pavement markings to indicate the presence of the track. There were two obstructions for northbound traffic located near the track. The first was a wooden fence approximately five and a half feet high running parallel to the track extending to the road. The fence was 48 feet from the track. The other obstruction was a trailer parked to the west of the road. Mr. Baerwald also testified that at night the highway lights from traffic on Louisiana Highway 90 and stationary lights along that highway would make it difficult for a northbound motorist to identify a locomotive headlight. He opined that the intersection created a safety hazard and that active protective devices (flashing lights and a gate) were warranted at the crossing.
Robert Patterson, a former public projects engineer for Southern Pacific, testified by deposition that this was not a particularly unsafe crossing because the road was not a through street and was a limited access road. He noted that the road leading to the trailer park had a 10 mph speed limit and that the road had speed breaks upon it. He stated that any motorist approaching the track had the opportunity and visibility to determine the proximity of the train prior to entering the crossing area.
Dwaine Evans, a consulting traffic engineer, testified that the fence located near the track did not obstruct a motorist’s view of an oncoming train because the track was located on higher ground than the roadway and also because a locomotive engine is an additional 12 to 15 feet high. From 105 feet away from the track a motorist could see all but the bottom three feet of the locomotive 250 feet down the track. At 71 feet away from the track a motorist would be able to see the train 583 feet down the track. He also stated that a train 250 feet down the track would block out any of the lights on Highway 90 which might be a distraction to an oncoming northbound motorist.
In his well written reasons for judgment the trial court concluded that Sally Weil was guilty of negligence which proximately caused the accident, thereby precluding her from recovery in her suit against Southern Pacific. He also determined that Eric Hess was not contribu-torily negligent in causing the accident and rendered judgment in his favor against Southern Pacific and Weil and her insurer. After a careful review of the record we adopt the trial court’s findings of fact and conclusions of law on these issues. The trial court’s reasons for judgment are as follows:
“Each case of this type must be decided upon its own facts and circumstances, and the application of the proper law to those facts. Buchholz v. Dealers Transport Co., 399 So2d 1303 [La.App. 4th Cir.1981]. The facts of this particular case are most unusual.
“The accident occurred on April 23, 1980, at the crossing immediately adjacent to a trailer park, where Weill [sic] *701 was a former resident. Both Weill [sic] and her guest passenger Hess admitted having consumed some beers some time before the accident occurred. Both plaintiffs also testified that they have absolutely no recollection of anything that happened from the time they left the trailer park until some time after the accident.
“The crossing where the accident occurred has no flashing red lights or automatic gates. The standard ‘crossbuck’ signs are in place on each side of the crossing. Also, at the time of the accident, there was no ‘whistle-board’ located in front of the crossing. [A ‘whistle-board’ is a small sign marked with an ‘X’. They are normally situated adjacent to the track some distance in front of a crossing, and serve as indicators to the train crew that a crossing is approaching and that the whistle must be sounded.]
“The ‘hands-on’ operator of the train that night was Peggy Canatella [sic], an engineer-trainee who had made that particular route only a few times prior to the accident. Assisting her was H.J. Usey, an engineer with a number of years experience. The train was apparently travelling no more than the speed limit of 25 mph.
“The driver has alleged that the negligent operation of the train was the proximate cause of her injuries. Specifically, she alleges that the train whistle was not blown the requisite distance prior to the crossing [300 yards, see La.R.S. 32:168] Testimony was introduced by two persons near the scene to the effect that they did not hear the whistle being blown prior to the collision. However, one of these witnesses was in her car, and was not actually attempting to negotiate the crossing at the time of the accident— which indicates to this Court that the witness would have had no reason to be listening particularly for a train whistle at that time. The other witness was working in an area some distance from the crossing, and would also have had no particular reason to be paying attention to whether or not the whistle was in fact being sounded. The train crew testified that the whistle was sounding, the bell ringing, and headlight was illuminated as it approached the crossing. The driver has not shown to this Court by a preponderance of the evidence that the whistle was not sounding.
“Moreover, the evidence tends to show that, more probably, than not, the driver of the vehicle did not stop before reaching the track. In negotiating a railroad crossing, a driver must use his senses of sight and hearing for possible oncoming trains; he is burdened with the responsibility of seeing and hearing that which he might and could have seen and heard. Buchholz, supra. The failure of a motorist to come to a complete stop before crossing a track does not preclude recovery, unless it appears that the failure to stop was the proximate cause of the accident. Walker v. Marcev, 427 So2d 678 [La.App. 4th Cir.1983]. The ‘dangerous trap doctrine’ [The railroad may not rely upon the duty of the motorist to stop and look if the physical circumstances are such that stopping and looking will do no good for the reason that the motorist must place himself in a position of peril dangerously near the track before he has a view of the oncoming train. Bertrand v. Missouri Pacific R.R. Co., 160 So2d 19 (La.App. 3rd Cir.1964) ] is not applicable here as the evidence shows that a motorist would have an unobstructed view a great distance down the track from a stopped position more than a safe distance from the track. [See Green v. Texas and Pacific Railway Co., 369 So2d 248 (La.App. 4th Cir.1979) for a similar situation.] Consequently, this Court holds that the failure of the driver to stop and see and hear what she could have seen and heard was a proximate cause of the accident constituting contributory negligence which bars her recovery from the Railroad Co. [A discussion of defendant liability under a strict liability theory is unnecessary, at this time, as victim fault is a defense and a bar to recovery under strict liability as *702 well as negligence. Olsen v. Shell Oil Co., 265 So2d 1285 (La.Sup.Ct.1978)]
“The negligence of Weill [sic] can not, however, be imputed to her guest passenger Hess. White v. State Farm, 64 So2d 245 ([La.]Sup.Ct.1953). And, the Court finds as a matter of fact that Hess was not guilty of any independent negligence which contributed to his injuries.”
Our study of the record likewise indicates no evidentiary basis for finding Hess contributorily negligent.
For the reasons assigned, we find no error in these factual determinations by the trial court and the judgment is affirmed at appellant’s costs.
AFFIRMED.